COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-432-CR

 

 

SAMUEL MATA                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In four points, appellant
Samuel Mata appeals his conviction for capital murder.  We affirm.

 

 

 








BACKGROUND

Appellant was charged with
committing the capital murder of Ann Barton Williams on or about November 10,
2004, by stabbing her and then committing or attempting to commit arson or
robbery.  He pled not guilty.

Ferrell Coleman testified
that Appellant had moved into Coleman=s house two weeks before November 10 and did not have his own
vehicle.  Coleman testified that he knew
Williams, that he dropped Appellant off at Williams= apartment on November 9, between six and seven p.m., and that he saw
Appellant the next day, when Appellant came home around five a.m.  Coleman testified that Appellant told him
that he had killed Williams and her dog and then had set Williams= apartment on fire.  Appellant
showed Coleman his knife[2]
and told him that he had parked Williams= van around the corner.  Coleman
testified that although he did not believe Appellant at first, when he saw a
brief news report about a woman, a dog, and an apartment on fire, he knew that
Appellant had told him the truth.








Coleman testified that he
told Appellant to get rid of the van because that was the only thing he could
think of to get Appellant out of the house and that Appellant said to meet him
at a McDonald=s in south
Dallas.  After Appellant left, Coleman
and his family went to the Arlington police station.  He testified, 

We went to the desk, me, and
Cherry and Sheila. . . . and I told [the desk officer] that I wanted to talk to
them about theCabout the
homicide this morning.  And they said,
well, what homicide, you talking about the fire, you know.  They didn=t know that a murder had been committed at all yet . . . .

Arlington police sergeant Mark Simpson testified
that on November 10, three people came to the police station to report the
murder of a woman and that one of those people was Coleman.  Sergeant Simpson testified that Coleman told
him about Appellant=s plan to
meet Coleman at the McDonald=s.








Dallas police officer James
Swinney testified that he had been on patrol on November 10 when he received a Abe on the look out@ alert for Williams= van.  He testified that he and
his partner went to the location they had been told that the suspect might be,
a McDonald=s, and that
there was a white van parked in the parking lot when they drove up.[3]  They arrested Appellant, patted him down, and
located the knife.  The knife tested
positive for Williams= blood and
DNA.  Arlington police officer Chad
Willie testified that the Dallas police officers transferred Appellant to him
at the McDonald=s.  He testified that the additional items taken
from Appellant at book-in included a credit card with Williams= name on it and some items of jewelry. 
Williams= brother and
daughter identified the jewelry, admitted into evidence at trial, as belonging
to Williams.    Appellant confessed to his
involvement in Williams= death in a
videotaped police statement, which was admitted into evidence and played for
the jury. Testimony from the various firefighters provided details about the fire
in Williams= apartmentCalthough all four burners on the stove and the oven had been turned on
high, the fire itself occurred in Williams= bedroom.  A Coleman fuel can,
located on the bed in Williams= bedroom, was admitted into evidence. Arlington fire investigator
Stuart Brozgold testified that in his opinion, the fire had been a set fire,
not an accidental one.  The medical
examiner testified that the heat injuries to Williams= body occurred after she was already dead, that the four stab wounds
were the cause of her death, that the blade width of the knife was small enough
to have produced Williams= wounds, and
that her injuries were not consistent with an accident, but had required four
separate thrusts. 

The jury found Appellant
guilty of capital murder.  The trial
court rendered judgment on that verdict and assessed punishment at life
imprisonment.[4]

 

 








SUFFICIENCY OF THE EVIDENCE

In his first two points,
Appellant complains that the evidence was not legally and factually sufficient
to support his conviction for capital murder.

Standard Of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 








In reviewing a factual
sufficiency challenge, we ask whether the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the fact‑finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact‑finder=s determination is manifestly unjust. 
Watson, 204 S.W.3d at 414‑15, 417; Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
To reverse under the second ground, we must determine, with some
objective basis in the record, that the great weight and preponderance of all
the evidence, though legally sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.  We must give due deference to the fact‑finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@  Johnson, 23 S.W.3d at
9.

Capital Murder

A person commits capital
murder if he intentionally causes the death of an individual in the course of
committing or attempting to commit robbery or arson, among other offenses.  See Tex.
Penal Code Ann. ''
19.02(b)(1), 19.03(a)(2) (Vernon 2005 & Supp. 2006).  Appellant=s sole complaint with regard to legal and factual sufficiency is that
the record indicates that he did not have the specific intent to kill
Williams.  He claims that the knife was
held up to Williams Ain a manner
that was intended to cause her to back away from him in her enraged state,@ and that he accidentally stabbed her.








We must consider all the
evidence admitted at trial, even improperly admitted evidence, when performing
a legal sufficiency review.  Moff v.
State, 131 S.W.3d 485, 489‑90 (Tex. Crim. App. 2004).  And, in a legal sufficiency review, the jury=s inference of intent is afforded more deference than the evidence
supporting proof of conduct.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Circumstantial evidence of a defendant=s guilty knowledge is not Arequired to meet the same rigorous criteria for sufficiency as
circumstantial proof of other offensive elements.@  Id. (quoting Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).  In determining the legal sufficiency of the
evidence to show an appellant=s intent, and faced with a record that supports conflicting
inferences, we Amust presumeCeven if it does not affirmatively appear in the recordCthat the trier of fact resolved any such conflict in favor of the
prosecution, and must defer to that resolution.@  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991). 
Specific intent can be inferred from conduct, remarks, or all the
surrounding circumstances.  See
Couchman v. State, 3 S.W.3d 155, 163 (Tex. App.CFort Worth 1999, pet. ref=d).  An oral expression of
intent is not required, and a defendant=s conduct alone is sufficient to infer intent.  See id.

The jury watched Appellant=s videotaped confession, in which Appellant stated that he choked
Williams with his hands.  He claimed that
he hit her with his knife one time and that it was an accident.  He indicated that he thought she was just
choking and that he knocked the lighted candle onto the bed.  He stated that he did not know how to stop
the blood and did not try to stop the bleeding. 
He said that he did not know if the bed caught on fire and that he just
left.  He used her keys to lock the
door.  He stated that the apartment was
smoky when he left.








In addition to Appellant=s videotaped confession, the jury also heard testimony from the
medical examiner that Williams was killed by four stab wounds, caused by four
separate thrusts.  Photographs of the
stab wounds were admitted into evidence and explained and published to the
jury.  The jury also heard Coleman=s testimony that Appellant told him that he had killed Williams and
showed Coleman his knife.  Coleman=s own criminal history was revealed to the jury before any of his
testimony about Appellant.








Reviewing this evidence in
the light most favorable to the verdict, we conclude that a rational trier of
fact could have found beyond a reasonable doubt that Appellant had the specific
intent to kill Williams.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
jury could have inferred this intent from the photographs and testimony about
the four stab wounds and resolved Appellant=s conflicting claim in his videotaped confession, that he accidentally
hit Williams once with the knife, by choosing to disbelieve him.  See Margraves, 34 S.W.3d at 919; Matson,
819 S.W.2d at 846.  Further, reviewing
this evidence in a neutral light and giving due deference to the jury=s determination, we draw the same conclusion.  See Watson, 204 S.W.3d at 414.  The photographs, the medical examiner=s testimony, Coleman=s testimony that Appellant said he killed Williams and set the
apartment on fire, Appellant=s own statements that he knocked the lighted candle onto the bed and
left the smoky apartment using Williams= keys to lock the door provided the basis upon which the jury could
have reasonably concluded that Appellant had the specific intent to kill
Williams, against the sole conflicting evidence presented by Appellant=s statement that it was an accident. 
See Johnson, 23 S.W.3d at 9, 11. 
We overrule Appellant=s first and second points.

MOTION TO SUPPRESS

In his third point, Appellant
complains that the trial court erred by overruling Appellant=s motion to suppress the video statement, which he alleges was taken
in violation of article 38.22 of the Texas Code of Criminal Procedure and the
Fifth and Fourteenth Amendments to the United States Constitution.  See U.S.
Const. amends. V, XIV; Tex. Code
Crim. Proc. Ann. art. 38.22 (Vernon 2005).

Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101, 108‑09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  Id. at 818‑19.  We then review the trial court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case, even if the trial court gave the wrong reason
for its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.

Suppression Hearing Findings

The trial judge made the
following oral findings of fact and conclusions of law[5]
at the conclusion of the suppression hearing:








On November the 10th of 2004, the Arlington
Police Detective, David Frias, came in contact with [Appellant] when he was
booked into the city jail.  He took him
to an interview room in the police department, gave him his Miranda warnings,
which are located on the videotape itself, and the card was signed by
[Appellant], which is admitted as State=s Exhibit No. 3.  That he made a recording of his entire
interview with [Appellant] and the third person located in the interview was .
. . Detective Ben Lopez[,] who is identified, and [Appellant].  That the recording device worked
correctly.  That it was operated by a
Detective Johnson . . . [t]hat the operator was competent and that it=s
accurate. . . . State=s
Exhibit 1 has not been altered.  State=s
Exhibit 2 has been altered to remove agreed-upon items.[[6]]

 

That the interrogation lasted one and a half
hours and was completely recorded.  That
[Appellant] never was threatened.  That
he understood what was going on.  That he
was responsive to the questions asked. 
That he had no complaints about his physical or mental health.  And that he had no complaints about any
treatment by any officer.

 

[Appellant=s] first Miranda warning was
given on the tape, and he indicated that he understood all parts of that
Miranda warning, and then he voluntarily and intelligently waived those rights
and gave the statement that=s contained in State=s
Exhibit No. 1.  And the Court finds that
the statement is freely and voluntarily made. 
That [Appellant] intelligently waived his rights, and as a matter of
law, finds that the statement is admissible.

 

Detective Frias testified at the suppression
hearing, and the trial judge watched the videotape before making his findings
and conclusions.

Article 38.22 Of The Texas Code Of
Criminal Procedure








An oral statement made as a
result of custodial interrogation is inadmissible unless the following are
shown: that an electronic recording, including videotape, is made of the
statement; that the accused was given the warnings in article 38.22, section
2(a) and knowingly, intelligently, and voluntarily waived the rights set out in
the warnings;[7]
that the recording device was capable of making an accurate recording, the
operator was competent, and the recording was accurate and unaltered; and that
all voices on the recording were identified. 
See Tex. Code Crim. Proc.
Ann. art. 38.22, ' 3(a).  All of these requirements were addressed in
the trial court=s findings
of fact, and Appellant contests only the voluntariness of his statement,
claiming that he did not understand his rights and that he would not have given
a statement if he had understood that he could terminate the interview.








We must examine the totality
of the circumstances to determine whether a statement was given
voluntarily.  Wyatt v. State, 23
S.W.3d 18, 23 (Tex. Crim. App. 2000); Bell v. State, 169 S.W.3d 384, 391
(Tex. App.CFort Worth
2005, pet. ref=d).  To determine whether Appellant=s will was overborne, rendering the statement involuntary, we examine
circumstances such as length of detention, incommunicado or prolonged
interrogation, denial of family access to him, refusals of requests to
telephone a lawyer or family, or physical brutality.  Lane v. State, 933 S.W.2d 504, 512
(Tex. Crim. App. 1996); Bell, 169 S.W.3d at 391.








Appellant was arrested during
the morning of November 10 and arrived at the Arlington jail that same day,
around 12:05 p.m.  Detective Frias began
the interview with Appellant at 1:50 p.m. and advised him of his Miranda
rights.  The interview took around an
hour and a half, although Detective Frias testified that in its entirety, it Alasted maybe two hours.@[8]  There is nothing in the record
to indicate that Appellant did not want to answer the detectives= questions or that he wanted to speak to a lawyer or to his family, or
that the police physically abused him or threatened him.  And although Appellant was in handcuffs
during the interview, there is nothing in the record to show, nor does he
allege, that he requested but was denied food, water, or bathroom breaks.[9]  There is no evidence that Appellant=s family attempted to contact him. 
Based on the totality of these circumstances, we conclude that Appellant
voluntarily gave his statement.  See
Bell, 169 S.W.3d at 391.








With regard to understanding
his warnings, as the trial court found, Appellant indicated on the videotape
that he did understand each warning as it was read to him by the police
detectives and then he read, initialed, and signed the Miranda card
given to him.  As found by the trial
court, during the videotaped interview and in plain writing on the Miranda
card, Appellant was clearly advised, AYou have the right to terminate the interview at any time,@ and indicated that he understood this right on the tape and by
signing the Miranda card.  At the
suppression hearing, Detective Frias testified that he was confident that
Appellant understood his Miranda warnings because A[Appellant] seemed articulate; he seemed able to comprehend the
conversation that we were having, and I asked him if he understood and he said
he did.@ Detective Frias also testified that Appellant never told him that he
wanted to terminate the interview, that he did not get the impression that
Appellant wanted to, and that he believed that Appellant=s statement was freely and voluntarily made.[10]

There is nothing in the
record to support Appellant=s assertion that his statement was involuntary, based on the totality
of the circumstances.  Bell, 169
S.W.3d at 391.  Nothing in the record
supports Appellant=s
contentions that he did not understand the warnings, that he did not know he
could terminate the interview, or that he would not have given the statement
had he known that he could terminate the interview.  To the contrary, the trial court=s explicit fact findings are supported by the record, both in the
videotape and in Detective Frias= testimony at the suppression hearing. 
Because those fact findings are also dispositive of the trial court=s legal ruling, we need not further address Appellant=s contentions, and we overrule his third point.  See Kelly, 204 S.W.3d at 818-19; Romero,
800 S.W.2d at 543.

ADMISSION OF EVIDENCE








In his final point, Appellant
complains that the trial court abused its discretion by overruling his rule 403
objection to the admission of the videotaped police statement.  See Tex.
R. Evid. 403.  He makes
essentially the same argument as in his third point, that the videotape was
unfairly prejudicial to him because he was Atricked@ into the
statement in violation of the state and federal constitutions.  He also complains that the trial court did
not conduct a rule 403 balancing test.  Id.

 

Standard Of Review








We review a trial court=s decision to admit or exclude evidence under an abuse of discretion
standard.  Green v. State, 934
S.W.2d 92, 101‑02 (Tex. Crim. App. 1996); Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  If the court=s decision falls outside the Azone of reasonable disagreement,@ it has abused its discretion.  Montgomery,
810 S.W.2d at 391.  As long as the trial
court=s ruling falls within the zone of reasonable disagreement, however, we
will affirm its decision.  Moses v.
State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  The trial court=s decision must be reasonable in view of all the relevant facts.  Santellan v. State, 939 S.W.2d 155,
169 (Tex. Crim. App. 1997).  The mere
fact that a trial court may decide a matter within its discretionary authority
in a different manner than an appellate court would in a similar circumstance
does not demonstrate that an abuse of discretion has occurred.  Manning v. State, 114 S.W.3d 922, 926
(Tex. Crim. App. 2003).

Rule 403

Evidence is relevant when it
has a tendency to make the existence of any fact more probable or less probable
than it would have been without the evidence.  Tex. R. Evid. 401.  Rule 403 allows for the exclusion of
otherwise relevant evidence when its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403; Shuffield
v. State, 189 S.W.3d 782, 787 (Tex. Crim. App.), cert. denied, 127
S. Ct. 664 (2006).  The trial court is in
a superior position to gauge the impact of relevant evidence in evaluating its
determination under rule 403.  See
Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).








Rule 403 favors the admission
of relevant evidence and carries a presumption that relevant evidence will be
more probative than prejudicial.  Shuffield,
189 S.W.3d at 787.  A rule 403 analysis
should include, but is not limited to, the following factors: how probative the
evidence is; the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way; the time the proponent needs to
develop the evidence; and the proponent=s need for the evidence.  Id.  With regard to rule 403, the trial court is
not required to conduct a separate hearing on the issue or to announce on the
record its mental balancing of the Aprobative versus prejudice@ factors.  Luxton v. State,
941 S.W.2d 339, 343 (Tex. App.CFort Worth 1997, no pet.). 
However, in reviewing the trial court=s 403 decision, we cannot merely conclude that Athe trial judge did in fact conduct the required balancing and did not
simply rule arbitrarily or capriciously.@  Montgomery, 810 S.W.2d
at 392; see also Mozon, 991 S.W.2d at 847.  Instead, we must measure the trial court=s ruling against the relevant criteria, listed above, by which a rule
403 decision is made.  Mozon, 991 S.W.2d
at 847.

Appellant=s videotaped statement was highly relevant and probative to the State=s case in that Appellant confessed to his direct involvement in
causing at least one of Williams= stab wounds and to starting the fire in Williams= bedroom.  See Shuffield,
189 S.W.3d at 787.  It also allowed the
jury to compare Coleman=s testimony
about what Appellant told him and the other evidence presented at trial with
what Appellant told the police, and to infer Appellant=s consciousness of guilt.  While
having the potential to impress the jury in some irrational, indelible way, the
statement also had the potential to operate in Appellant=s favor, if the jury had chosen to believe his argument that the
stabbing had been accidental.  See id.
 Portions of the videotape that were
not pertinent to the case were redacted, so as to reduce the time needed for
its presentation.  See id.








After reviewing the balancing
criteria in light of the relevant facts, we cannot say that the trial court=s decision was unreasonable.  See
Santellan, 939 S.W.2d at 169.  And
although Appellant now contends that he was Atricked@ into making
his statement, as discussed above with regard to his suppression motion, we
have discerned no instance of trickery involved in the acquisition of the
statement and Appellant has failed to direct us to any.  Appellant has failed to overcome the
presumption that this relevant evidence was more probative than
prejudicial.  Therefore, we conclude that
the trial court did not abuse its discretion by overruling Appellant=s rule 403 objection with regard to the videotaped confession, and we
overrule his fourth point.

CONCLUSION

Having overruled all of
Appellant=s points, we
affirm the judgment of the trial court.

 

 

DIXON W. HOLMAN

JUSTICE

 

 

PANEL
B:  DAUPHINOT, HOLMAN, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED:  June 7, 2007











[1]See Tex.
R. App. P. 47.4.





[2]The knife was referred to as a Abuck knife@ or Apocket knife@ throughout the trial
testimony.  The knife itself, State=s exhibit 48, was admitted into
evidence at trial.





[3]Williams owned a white Ford
Econoline van with the license plate YLJ29V.





[4]The State elected not to seek the
death penalty.





[5]While neither party moved for
written findings of fact and conclusions of law, and none were filed, it is
apparent from the record that the trial court intended for its findings and
conclusions to be expressed via its oral pronouncements.  In reviewing a motion to suppress, oral
findings of fact can be considered as findings of fact on the record and given
due deference.  State v. Cullen,
195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (stating that the trial court=s findings and conclusions from the
suppression hearing need to be recorded in some way, whether written out and
filed by the trial court, or stated on the record at the hearing); see also
Flores v. State, 177 S.W.3d 8, 13 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d) (reviewing trial court=s oral findings of fact on a motion
to suppress), cert. denied, 126 S. Ct. 2298 (2006).





[6]State=s Exhibit 2 is a copy of State=s Exhibit 1 with redaction of sound
in parts that do not pertain to the capital murder case, such as Appellant=s mention, twice, that he had been
in prison in California.





[7]Section 2(a)=s warnings to the accused are that:

 

(1) he has the right to remain
silent and not make any statement at all and that any statement he makes may be
used against him at his trial;

(2) any statement he makes may be
used as evidence against him in court;

(3) he has the right to have a
lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a
lawyer, he has the right to have a lawyer appointed to advise him prior to and
during any questioning; and

(5) he has the right to terminate
the interview at any time.

 

Tex. Code
Crim. Proc. Ann. art.
38.22, ' 2(a)(1)-(5).





[8]The videotape also included
obtaining Appellant=s consent for DNA samples and
taking those samples.





[9]To the contrary, on the videotape,
the detectives asked Appellant if he needed anything during the interview.





[10]In his brief, Appellant alludes to A[t]rickery or deception,@ and he argued during the
suppression hearing that the detectives, although Aextremely low key, . . . [were]
using psychological coercion on [Appellant] to, in essence, coerce him to give
a statement that he otherwise would not give.@ 
However, Appellant does not direct us to any evidence of such misconduct
by the detectives during the interview.